IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERNEST GARZA, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | No. 1:24-cv-00359-DAE |
| TRANS UNION, LLC, | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Trans Union, LLC's ("Defendant" or "Trans Union") Motion to Dismiss. (Dkt. # 47.) Plaintiff Ernest Garza ("Plaintiff") filed a response, (Dkt. # 48), and Defendant timely replied. (Dkt. # 49.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the motion, the parties' briefs, and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss **WITH PREJUDICE** for the reasons below.

BACKGROUND

Plaintiff was arrested in February 2018. (Dkt. # 45 at ¶ 10.) While in custody in October 2018, he underwent emergency surgery. (Id. at ¶ 12.) Sometime before November 10, 2024, he discovered that Business and Professional Collection Service, Inc. ("B&P") was reporting a collections account in relation to his

1

emergency surgery.  (Id. at ¶ 13.)  Around November 10, 2024, Plaintiff disputed this transaction to Trans Union, a Credit Reporting Agency ("CRA"), saying that he was not responsible for the amounts owed and providing documentation in support of that assertion.  (Id. at ¶ 20.)  Plaintiff alleges that Trans Union failed to investigate, correct, or remove the allegedly inaccurate B&P account from his credit file.  (Id. at ¶ 21.)

Plaintiff filed suit against Defendants Trans Union and B&P on April 5, 2024. (Dkt. # 1.)  After earlier motion practice, the Court granted Trans Union's motion for judgment on the pleadings on May 23, 2025, but granted leave to amend given new factual allegations raised in Plaintiff's responsive pleadings.  (Dkt. # 43.)  Shortly after, Plaintiff filed the operative Second Amended Complaint.  (Dkt. # 45.) Defendant Trans Union then filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. #47.)  The motion is now ripe for review.

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In analyzing whether to grant a 12(b)(6) motion, a court accepts as true "all well-pleaded facts" and views those facts "in the light most favorable to the plaintiff." United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (citation omitted).  A court need not "accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

## DISCUSSION

Plaintiff's Second Amended Complaint brings causes of action pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, alleging that Trans Union and B&P negligently and recklessly disseminated false information regarding the Plaintiff's credit.  (Dkt. # 45 at ¶ 1.)  Defendant argues that Plaintiff's Second Amended Complaint fails to state a claim under FCRA §§ 1681e(b) and 1681i.  (Dkt. #45 at 1–2.)  The Court will discuss each claim in turn.

I.      Section 1681i Claim

Section 1681i(a) of the FCRA provides that if a consumer disputes the completeness or accuracy of any item in his file, a credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file."  15 U.S.C. § 1681i(a)(1)(A); Ostiguy v. Equifax Info. Servs.,

3

LLC, No. 16-CV-790-DAE, 2017 WL 1842947, at *3 (W.D. Tex. May 4, 2017). The

statute further provides,

> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(5).   "In a reinvestigation of the accuracy of credit reports, a

credit bureau must bear some responsibility for evaluating the accuracy of

information obtained from subscribers."  Stevenson v. TRW Inc., 987 F.2d 288, 293

(5th Cir. 1993).

"[C]ase law and common sense dictate that a consumer may bring a

claim under [§ 1681i(a) of the FCRA] only when an inaccuracy has been included

on his credit report."  Ostiguy, 2017 WL 1842947, at *3 (quoting Morris v. Trans

Union LLC, 420 F. Supp. 2d 733, 751 (S.D. Tex. 2006)), aff'd sub nom. Ostiguy v.

Equifax Info. Servs., L.L.C., 738 F. App'x 281 (5th Cir. 2018); see Norman v.

Experian Info. Sols., Inc., No. 3:12-CV-128-B, 2013 WL 1774625, at *4 (N.D. Tex.

Apr. 25, 2013) (holding that a plaintiff must prove that his consumer report included

inaccurate information to succeed on a § 1681i claim); see also DeAndrade v. Trans

Union LLC, 523 F.3d 61, 67 (1st Cir. 2008) ("[T]he weight of authority in other

circuits indicates that without a showing that the reported information was in fact

4

inaccurate, a claim brought under § 1681i must fail.").  Absent such an inaccuracy, "no damages proximately caused by an FCRA violation would result."[1] Morris, 420 F. Supp. 2d at 751 (citing Hyde v. Hibernia Nat'l Bank in Jefferson Parish, 861 F.2d 446, 448 (5th Cir. 1988)).

A credit entry is "inaccurate" within the meaning of the FCRA if it is (1) "patently incorrect," or (2) "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998) (citing Pinner v. Schmidt, 805 F.2d 1258, 1262 (5th Cir. 1986).  Such an "inaccuracy is a threshold requirement for § 1681i claims."  Reyes v. Equifax Info. Servs., LLC, 140 F.4th 279, 287–289 (5th Cir. 2025).

---

[1] In some cases, this may create a standing issue.  The U.S. Supreme Court has held that plaintiffs must show a concrete injury even in the context of a statutory violation. TransUnion LLC v. Ramirez, 594 U.S. 413, 414 (2021).  In other words, "[a]n injury in law is not an injury in fact."  Id.  In this case, Plaintiff has alleged in his Complaint that he has suffered "harm[] in his daily life, by the impact that this derogatory information has had on his credit score and . . . defamatory harm . . . as a result[.]" Dkt. #45.  Monetary harms readily qualify as concrete injuries under Article III, and various intangible harms—like reputational harms—can also be concrete. TransUnion, 594 U.S., at 414.  At this stage of the litigation, the Court finds that Plaintiff has alleged sufficient facts to establish standing.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990))).

In its Motion to Dismiss, Defendant argues that Plaintiff fails to adequately allege facts that support the existence of any inaccuracy because (1) Plaintiff only presented a legal dispute that Trans Union was not required to resolve under the FCRA; and (2) Trans Union's reporting of the account is accurate.  (Dkt. # 47 at 4.)

In his Second Amended Complaint, Plaintiff alleges that Trans Union's reporting was "inaccurate" because "Plaintiff does not owe this money."  (Dkt. # 45 at ¶ 14.)  He alleges that he "never contracted with the medical provider or agreed to pay them anything" and that "the mental health facility he was confined to did."  (Id. at ¶ 15.)  His Complaint alleges that it "was, and should have been, obvious to the Defendants that the Plaintiff could not possibly have incurred this medical bill of $2650 while in the State's custody" because "under clear Texas law, an inmate's liability for medical care provided to him . . . is only $13.55 per visit, and cannot exceed a maximum of $100 per year."  (Id. at ¶¶ 17–18.)  Plaintiff says that Trans Union "could have easily verified" that the charges were incorrect.  (Id. at ¶ 19.)

However, these allegations only go to the legal validity of the debt, and not a factual inaccuracy.  As Defendant notes in its reply, "the Fifth Circuit "join[ed] the other circuits in holding that [Credit Reporting Agencies] are not required to

6

investigate the legal validity of disputed debts under the FCRA."[2]  Reyes, 140 F.4th

at 287–289 (5th Cir. 2025) (citing DeAndrade, 523 F.3d at 68 (affirming summary

judgment dismissal of § 1681i claim because consumer was "launching an

impermissible collateral attack against a lender by bringing an FCRA claim against

a [CRA]").  (Dkt. #49.)  Instead, challenges to validity are generally dismissed as

"collateral attacks" not within the scope of FCRA.  See DeAndrade, 523 F.3d at 68.

Plaintiff might have stated a cognizable claim if he had alleged that the legal validity

of the debt had been "sufficiently settled" by a prior binding decision or

administrative determination.  Holden v. Holiday Inn Club Vacations Inc., 98 F.4th

1359, 1368 (11th Cir. 2024). Here, however, no such claim was made and none of

the facts suggest there was any such determination made.  (Dkt. #45.)

Although Plaintiff alleges that it should have been obvious that he could

not possibly have incurred this medical bill, (id. at ¶ 17), this determination would

have still required that Trans Union analyze "a not-yet-adjudicated position" and

undertake a legal issue determination that it is "neither qualified nor obligated to

---

[2] Indeed, since Credit Reporting Agencies lack legal authority to resolve questions of law, "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." Carvalho v. Equifax Information Servs., 629 F.3d 876, 891 (9th Cir. 2010).  Courts have held that "[t]he FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed." Wright v. Experian Info. Sols., Inc., 805 F.3d 1232, 1244 (10th Cir. 2015).

resolve[.]"  Reyes v. Equifax Info. Servs., LLC, No. 4:21-CV-639-SDJ, 2024 WL 1308000 (E.D. Tex. Mar. 27, 2024), aff'd sub nom. Reyes, 140 F.4th; see also Denan v. Trans Union LLC, 959 F.3d 290, 296 (7th Cir. 2020).  Alleged inaccuracies that "evade objective verification" because they turn on unsettled legal questions are not cognizable under the FCRA.  See, e.g., Mader v. Experian Info. Sols., Inc., 56 F.4th 264, 269–70 (2d Cir. 2023).

Plaintiff contends that in the present case, Trans Union did not have to make any judgments on legal questions "because the disputed information was readily and objectively verifiable." (Dkt. # 48 at 6.)  Plaintiff attempts to distinguish his claim from that of the plaintiff in Reyes, avoiding the direct language in the decision disfavoring collateral attacks in favor of a narrow reading that emphasizes whether the disputed information is "sufficiently objectively verifiable" as the relevant factor for determining liability.  (Dkt. #48); Reyes, 140 F.4th at 288. Plaintiff contrasts the question of disputed charges in Reyes with his own by framing his "reported liab[ility] for a debt" as instead one "that he cannot possibly owe, under black-and-white Texas law."  (Dkt. #48.)  This reasoning presumes that the level of ambiguity in a relevant statute is a determining factor in assessing its "objective[] verifiab[ility]."  This Court disagrees.

Plaintiff relies on the language in Bray v. TransUnion, LLC that states, "if a legal question is sufficiently settled . . . the FCRA sometimes requires that . . .

8

be reflected in credit reports[.]"  Plaintiff suggests that this dispute turns on whether the specific *law* in question is sufficiently "settled," rather than the underlying *legal dispute*.  Plaintiff employs the word "settled" under a meaning that implies the Texas Government Code provision implementing caps on inmate fees for healthcare is *well-established or unambiguous*.  (Dkt. #48) ("The [fee cap] law in Texas is clear and well-settled").  This constitutes a semantic change that misapplies the cited courts' usage of the word.  "Settled," as used in Holden and Bray, refers instead to the closure of a particular legal dispute.  Whether a CRA must apply a legal rule in a reinvestigation turns on whether the legal question presented has in fact been resolved in a legal process, not on the perceived complexity or ambiguity of the underlying statute.  Reyes 140 F.4th at 287 (noting that "[CRAs] are not tribunals[,]" "[CRAs] are not well suited to adjudicate legal defenses to a debt[,]" (citing Chaitoff v. Experian Info. Sols., Inc., 79 F.4th 800, 811 (7th Cir. 2023), and "the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt" (citing Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1156 (9th Cir. 2009))).

Plaintiff asserts "that the Circuit Courts have agreed that [a determination of objective verifiability] can include a basic application of law to facts, if the law on the issue is settled." (Dkt. #48.)  However, the cited cases— demonstrating that the Second, Ninth, and Eleventh Circuits have not adopted a

9

bright-line rule precluding CRA obligation to investigate legal questions—do not supersede the clear, binding rule clarified by the Fifth Circuit in <u>Reyes</u>.  <u>See Reyes</u> 140 F.4th at 289 (holding that "consumer reporting agencies are not required to investigate the legal validity of disputed debts under the FCRA[]"); <u>contra Sessa v. Trans Union, LLC</u>, 74 F.4th 38, 43 (2d Cir. 2023); <u>Gross v. CitiMortgage, Inc.</u>, 33 F.4th 1246, 1253 (9th Cir. 2022); <u>Holden v. Holiday Inn Club Vacations Inc.</u>, 98 F.4th 1359, 1369 (11th Cir. 2024).

Plaintiff frames the question of the debt's validity as a purely factual matter, reducing the dispute to a simple question: "was the Plaintiff provided this medical service while an inmate, as he claimed in his dispute letter?"  (Dkt. #48 at 14.)  This is not an accurate characterization of the question presented to Defendant. More accurately put, under Plaintiff's theory, Defendant would be required to answer a whole host of questions. Some of these would indeed be factual, but many are legal.[3]

---

[3] As an illustration of this point, to be able to properly investigate Plaintiff's request, Defendant would have been required to determine whether or not: (1) Tex. Gov't Code § 501.063 applies to this account in light of the nature of the encounter and the parties; (2) Plaintiff, at the time of treatment, was an inmate confined in a facility operated by or under contract with Texas Department of Criminal Justice ("TDCJ") within the statute's scope; (3) the treating location was a halfway house excluded by the statute; (4) the medical encounter qualified as one the inmate initiated under the statute's text; (5) the account was exempt from the statute or displaced by other controlling law; (6) Conroe Regional Medical Center was a facility "operated by or under contract with" TDCJ at the relevant time; (7) any other laws, rules, or contracts alter who is legally responsible to pay beyond any statutory copay.  <u>See</u> (Dkt. #47 at

At this stage, even taking Plaintiff's allegations as true and drawing inferences in his favor, his Second Amended Complaint does not plead sufficient facts to demonstrate that he raised factual inaccuracies. (Dkt. # 45); c.f. Iqbal, 556 U.S. at 678 (concluding that a court need not "accept as true a legal conclusion couched as a factual allegation."). For the foregoing reasons, the question of the validity of Plaintiff's debt was not a factual matter. Because Plaintiff has not alleged a cognizable factual inaccuracy, the § 1681i claim fails as a matter of law.

## II.    Section 168e(b) Claim

To state a § 1681e(b) claim, Plaintiff must plausibly allege (1) an inaccuracy in the report and (2) that the inaccuracy resulted from the CRA's failure to follow reasonable procedures when preparing the report. Sepulvado, 158 F.3d at 895–96. As explained above, Plaintiff has not identified any "patently incorrect" or materially misleading fact in the tradeline; he advances only a legal defense to the debt. Absent a cognizable inaccuracy, the § 1681e(b) claim necessarily fails as well. The FCRA does not provide a vehicle to collaterally challenge the legal validity of a debt in a reinvestigation or accuracy claim. Reyes, 140 F.4th at 289.

---

9–10); see also Tex. Gov't Code § 501.063. This illustrative list of legal questions is hardly exhaustive.

CONCLUSION

Accordingly, the Court finds that Defendants Motion to Dismiss should be **GRANTED**. (Dkt. # 47.) Further, because Plaintiff has already amended following the Court's prior order and the core deficiency remains legal rather than factual, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: Austin, Texas, February 6, 2026

_____
David A. Ezra
Senior United States District Judge